UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JUAN PAREDES,

                Plaintiff,                           **MEMORANDUM AND ORDER**
                                                                                 16-CV-5603 (PKC) (RER)
    -against-

TARGET CORPORATION,

                Defendant.
----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Juan Paredes brings this action against Defendant Target Corporation ("Target") for negligence under New York law in connection with a slip-and-fall inside one of Defendant's stores. Before the Court is Defendant's motion for summary judgment. For the reasons stated below, Defendant's motion is granted and this matter is dismissed.

## BACKGROUND

**I.    Relevant Facts[1]**

      On December 24, 2015, at 5:46:50 p.m., Plaintiff fell in the chemicals aisle of a Target store in Queens. (Defendant's 56.1 Statement ("Def.'s 56.1"), Dkt. 24, ¶ 1; Plaintiff's 56.1 Counterstatement ("Pl.'s 56.1 Counter"), Dkt. 28, at 2[2] ¶ 1; Electronic Incident Report, Dkt. 21-7.) He slipped on a clear liquid, which he did not notice prior to his fall. (Def.'s 56.1, ¶¶ 3–5, 7–

---

[1] Unless otherwise noted, a standalone citation to Defendant's 56.1 Statement or Plaintiff's 56.1 Counterstatement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendant's 56.1 Statement or Plaintiff's 56.1 Counterstatement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

[2] With the exception of deposition transcripts, page numbers refer to the pagination generated by the CM/ECF system, and not the document's internal pagination.

1

8.) Plaintiff does not know how long the liquid was there prior to his fall, and does not know where the liquid came from. (*Id.* at ¶¶ 10, 12.) Plaintiff's daughter, Paola Paredes ("Paola"), was present when Plaintiff fell and also stepped in the liquid in the moments following her father's fall. (*Id.* at ¶¶ 2, 6.) However, she did not notice any liquid on the floor prior to her father's fall, does not know how long it was present on the floor before his fall, and does not know the source of the liquid. (*Id.* at ¶¶ 9, 11, 13.)

Michael Colon was the first Target employee to respond to Plaintiff's fall. At 6:00 p.m., approximately fifteen minutes after the incident, he completed a Team Member Witness Statement. (Pl.'s 56.1 Counter, at 4 ¶ 7; Team Member Witness Statement, Dkt. 21-6.) It stated, *inter alia*, that there was a "chemical spill . . . and a puddle of the chemical on the floor" where the fall occurred, but that there was no open store merchandise or other item on the floor that could have been the source of the liquid. (Dkt. 21-6; *see also* Deposition of Juan Paredes ("Paredes Dep."), Dkt. 21-10, at 27:15–20.) Plaintiff and Paola then spoke with a manager at the store, Fabian Jimenez, and assisted Jimenez in completing a Guest Incident Report, which Plaintiff then read and signed. (Def.'s 56.1, ¶¶ 16–22, 24; Pl.'s 56.1 Counter, at 4 ¶ 9; Guest Incident Report, Dkt. 21-4.) It stated, *inter alia*, that the fall was caused by a "clear chemical . . . spilled on [the] floor." (Dkt. 21-4.) Plaintiff's daughter also reviewed the Guest Incident Report before Plaintiff signed it. (Def.'s 56.1, ¶ 23.) Additionally, Jimenez completed an internal report, known as an LOD Investigation Report, which noted that when Jimenez went to the scene of the fall "there was a clear spot of chemical spilled on the floor." (LOD Investigation Report, Dkt. 21-5.) The parties agree that Jimenez was not aware of any report, by an employee or customer, about the liquid on the floor prior to Plaintiff's incident. (Def.'s 56.1, ¶¶ 25–26.) Defendants took three photographs of the floor approximately twenty minutes after Plaintiff's fall. (Def.'s 56.1, ¶ 15; Dkt. 21-8

2

(photographs).) Neither Plaintiff nor his daughter took photographs of the spill. (Paredes Dep., 36:10–13.)

II. **Procedural History**

Plaintiff filed his initial complaint in New York Supreme Court, County of Queens, on January 15, 2016. (Dkt. 1-2.) Defendant timely removed the action to this Court on October 7, 2016.[3] (Dkt. 1.) Defendant filed its motion for summary judgment on March 5, 2018. (Dkt. 20.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). However, "the mere existence of some alleged factual

---

[3] Defendant removed on October 6, 2016, after receiving Plaintiff's Bill of Particulars, dated September 30, 2016. (*See* Notice of Removal, Dkt. 1, at ¶ 4.) This was the first document to detail that Plaintiff was seeking over $75,000 in damages, making the case removable. (*Id.*) Defendant's removal was therefore timely, even though it occurred 10 months after the case was filed, because Defendant removed within 30 days of receiving "a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(C)(3); *cf. Suttlehan v. Midfirst Bank*, 205 F. Supp. 3d 366, 367 (S.D.N.Y 2016) (denying motion to remand where the Defendant had removed within 30 days of service of a Bill of Particulars, which detailed the amount in controversy).

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (internal citations and quotations omitted). With respect to a motion for summary judgment in a slip-and-fall case in federal court, "the plaintiff must demonstrate a genuine issue of material fact that the defendant either created the dangerous condition or had actual or constructive notice of the condition." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014); *Gonzalez v. Kmart Inc.*, No. 13-CV-5910 (PKC) (VMS), 2016 WL 3198275, at *3 (E.D.N.Y. June 8, 2016). Courts "typically grant summary judgment for the defendant where there is evidence that a hazard existed, but no evidence as to how it was created or who was responsible for it." *Lacey v. Target Corp.*, No. 13-CV-4098 (RML), 2015 WL 2254968, at *2 (E.D.N.Y. May 13, 2015).[4]

Plaintiff does not allege that Defendant had actual notice; therefore, the Court will only address whether Defendant had constructive notice. (*See generally* Plaintiff's Brief ("Pl.'s Br."), Dkt. 30.) "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [a] defendant's employees to

---

[4] The Court notes that the burden of proof is different in a slip-and-fall case in state court. *See, e.g.*, *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12–13 (2d Cir. 2008) (summary order); *Vasquez v. United States*, 14-CV-1510 (DF), 2016 WL 315879, at *4–5 (S.D.N.Y. Jan. 15, 2016). "Under New York law, [a] defendant who moves for summary judgment in a [sl]ip-and-fall case has the initial burden of making a prima facie showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it." *Vasquez*, 2016 WL 315879, at *4 (internal citation and quotations omitted).

discover and remedy it." *Lacey*, 2015 WL 2254968, at *3 (citations and quotations omitted); *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924 (PKC) (VMS), 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016) (same) (collecting cases). "[P]laintiff must provide some basis for an inference that the [spill was] there long enough to blame defendant for the accident." *Lacey*, 2015 WL 2254968, at *4. A "general awareness" of the allegedly hazardous condition is insufficient. *DeAngelis v. Am. Airlines, Inc.*, No. 06-CV-1967 (NGG), 2010 WL 1292349, at *6 (E.D.N.Y. Mar. 31, 2010) (citation and quotation omitted). "[A] jury should not be allowed to conclude, based on mere speculation, that a condition was visible and apparent for a sufficient length of time to be discovered and remedied." *Painchault v. Target Corp.*, No. 09-CV-1831 (NGG) (RML), 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011) (citation and internal quotation marks omitted).

There is nothing in the record to indicate that Defendant had constructive notice. Assuming, *arguendo*, that the spill was visible and apparent (something that Defendant contests), Plaintiff has failed to provide evidence to support the inference that the spill existed for a sufficient length of time. It is undisputed that Plaintiff and his daughter did not know how long the spill was there prior to the accident or see the spill prior to the accident, and that no Target employee or customer reported a spill before Plaintiff's fall. Nonetheless, Plaintiff stated at his deposition that he believes that the substance was there for a "long" time because, after he fell, he saw that there was a large puddle of liquid on the floor that was "very thick" and there were shoe marks underneath the liquid. (Paredes Dep., 27:21–28:13.) Paola also stated at deposition that the liquid was "dirty" and "sticky" after Plaintiff's fall and that the spill "had footprints." (Deposition of Paola Paredes, Dkt. 21-11, at 17:10-14; *see also* Pl.'s Br., at 10 (noting that the fourth photograph

provided by Defendant shows "smears with what seems to be shoe-mark(s) in the middle of the floor.").)

However, a reasonable jury could not infer from Plaintiff's evidence that the spill had existed for a significant length of time before Plaintiff fell. *See Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 333 (E.D.N.Y. 1998) ("[T]he telltale signs supporting an inference of a long-standing condition are not present."). The mere presence of a couple of footprints does not support an inference that the spill had existed for long enough for multiple people to track through it before Plaintiff slipped. *Compare Figueroa v. Pathmark Stores, Inc.*, No. 02 Civ. 4992 (THK), 2004 WL 74261, at *4 (S.D.N.Y. Jan. 15, 2004) (denying summary judgment when Plaintiff observed "a trail of pink liquid leading from the front of the store though the checkout area with shopping cart tracks and footprints through it, leading in different directions."), *with Diaz v. Target Corp.*, 15-CV-5731 (RMM) (ST), 2017 WL 4358754, at *3 (E.D.N.Y. Sept. 21, 2017) (granting summary judgment when the plaintiff's daughter testified that "the water appeared dirty and contained a pair of footprints."). Furthermore, Plaintiff admits that he and his daughter stepped in the liquid moments after his accident. (Def.'s 56.1, ¶¶ 5–6.) *Cf. Nolasco v. Target Corp.*, 10-CV-3351 (ARR), 2012 U.S. Dist. LEXIS 191275, *9–10 (E.D.N.Y Nov. 13, 2012) ("[E]ven if it were plausible that another person had walked through the spill prior to plaintiff, it would remain speculative, on this record, as to when that occurred relative to plaintiff's accident."). Plaintiff's evidence that the water was dirty, sticky, or thick is likewise unavailing. *See, e.g.*, *id.* at *8–9 (granting summary judgment when "it would be reasonable to infer that it was the contact with the plaintiff's own shoes that gave the spilled liquid an unclean . . . appearance"); *Watts v. Wal-Mart Stores E., LP*, No. 16-CV-4411 (KMK), 2018 WL 1626169, at *8 (S.D.N.Y. Mar. 29, 2018) (granting summary judgment when plaintiff described the spilled liquid as sticky); *Strass*, 2016

6

WL 3448578, at *7 ("[A]bsent evidence regarding the increase in size of the puddle, any inference of constructive notice based on Plaintiffs' description of the size of the puddle is pure speculation.").

However, Plaintiff also argues that the surveillance video footage of the store at the time of the incident "clearly establishes that the chemical spill was present on the floor [and] left untreated for <u>at least 37 minutes</u> prior to Plaintiff's fall" because there were at least two incidents "captured on the video for which a reasonable jury may draw [a] strong inference that the chemical spill existed well before the incident involving" Plaintiff. (Pl.'s Br., at 15, 19 (emphasis in original); *see generally* Surveillance Video ("Video"), Dkt. 21-9.) First, Plaintiff alleges that from 5:28:05 p.m. to 5:28:08 p.m., a child "is seen slipping and losing balance at the very exact spot where Plaintiff's fall [was]." (Pl.'s Br., at 19.) Second, Plaintiff alleges that from 5:41:09 p.m. to 5:41:30 p.m., a man is shown walking in the spot where Plaintiff fell, walking to another aisle, and then, six seconds later, "possibly to glance back at the aisle" where Plaintiff fell, "moving his right leg unnaturally," and "rub[bing] the bottom of his right shoe unto the floor." (*Id.* at 20.)

Plaintiff's description of these two "incidents" is wholly speculative and insufficient to create a genuine dispute of material fact. The video does not show, with any clarity, the floor where Plaintiff's fall occurred. In fact, the aisle where it occurred appears in the far distance in the top right corner of a grainy surveillance video. With respect to the first "incident" Plaintiff points to, Defendant correctly notes that the child "was clearly jumping while holding an adult's hand in the preceding seconds of the video," (Defendant's Reply Brief, Dkt. 25, at 11), and it is not evident that the child actually lost his balance, let alone fell. With respect to the second event, the video does not support Plaintiff's claim that the man's behavior—including his supposed "unnatural" leg movement—was caused by an interaction with the clear liquid. (*Id.* at 12.)

7

Moreover, Plaintiff's claim of constructive notice based on the video is undermined by the fact that people walked in the aisle, and in the spot where Plaintiff fell, at least forty times[5] without incident or complaint in the thirty-seven minutes prior to Plaintiff's accident. *See Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775 (GWG), 2013 WL 4017166, at *6 (S.D.N.Y. Aug. 7, 2013) (finding no constructive notice where the store video does not "suggest that any of the dozens of customers or employees that walked through the area in the 25 minutes prior to the accident—many of whom were pushing shopping carts—were impeded in any way by a plastic display on the ground. None of them even appear to look at the portion of the ground where the accident occurred."); *Watts*, 2018 WL 1626169, at *5 (finding no constructive notice where the "video does not suggest that any of the customers or employees that walked through the area in the hour of video surveillance before the fall noticed anything on the ground"); *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886 (JCM), 2017 WL 568761, at *6 (S.D.N.Y. Feb. 10, 2017) ("Plaintiff does not suggest, and there is no indication in the evidence, that Defendant's employees had observed the substance on the ground prior to Plaintiff's fall. Nor does Plaintiff point to any evidence that Defendant had received reports of the condition. In fact, the surveillance video shows that four individuals walked past the area where Plaintiff fell without any indication that they noticed the substance on the ground."); *cf. Chong v. Target Corp.*, No. 14-

---

[5] *See* Video, at 5:10:13–5:10:14 p.m., 5:11:52–5:12:05 p.m., 5:12:20–5:12:49 p.m., 5:13:04–5:13:06 p.m., 5:13:19–5:13:22 p.m., 5:15:25–5:15:32 p.m., 5:15:53–5:15:55 p.m., 5:16:06–5:16:20 p.m., 5:16:42–5:16:49 p.m., 5:17:07–5:17:09 p.m., 5:17:15–5:17:19 p.m., 5:17:24–5:17:28 p.m., 5:18:43–5:18:46 p.m., 5:20:34–5:20:36 p.m., 5:21:21–5:21:23 p.m., 5:23:17–5:23:27 p.m., 5:24:32–5:24:46 p.m., 5:25:23–5:25:46 p.m., 5:27:19–5:27:22 p.m., 5:27:47–5:27:58 p.m., 5:28:07–5:28:09 p.m., 5:29:06–5:29:08 p.m., 5:29:18–5:29:19 p.m., 5:30:23–5:30:49 p.m., 5:31:30–5:31:37 p.m., 5:31:48–5:31:51 p.m., 5:32:01–5:32:05 p.m., 5:32:28–5:32:29 p.m., 5:33:13–5:33:15 p.m., 5:34:37–5:34:44 p.m., 5:35:14–5:35:17 p.m., 5:36:03–5:36:22 p.m., 5:36:27–5:36:29 p.m., 5:37:45–5:38:57 p.m., 5:39:12–5:39:13 p.m., 5:39:47–5:39:49 p.m., 5:40:10–5:40:12 p.m., 5:41:10–5:41:15 p.m., 5:42:21–5:42:25 p.m., 5:42:44–5:42:46 p.m., 5:43:45–5:44:19 p.m., 5:45:42–5:45:44 p.m., 5:46:38–5:46:41 p.m.

CV-547 (WFK) (JO), 2015 WL 2250250, at *4–5 (E.D.N.Y. May 12, 2015) (finding constructive notice where a videotape record of the period before plaintiff fell showed patrons attempting to walk around the area in which plaintiff fell). This includes a customer who appears to stand, for over a minute, in the spot where Plaintiff fell less than eight minutes later. (Video, at 5:37:45–5:38:57.) In light of the fact that Plaintiff puts forth only "speculation" as to how the long the substance was on the floor and its visibility, Plaintiff has failed to raise a triable issue of fact. *See Quarles*, 997 F. Supp. at 331 ("There is no proof, only mere speculation, as to how the substance got on the floor . . . and absent evidentiary proof in admissible form to prove otherwise, the plaintiff has not raised a triable issue of fact."). Therefore, Defendants' motion for summary judgment is granted.

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 27, 2019
       Brooklyn, New York